UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARTEL FAMILY REALTY, LLC, *et al.*, | ) | CASE NO.:  1:23-cv-273 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RAJEEV BHATIA, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court is Defendants' Motion to Dismiss the Complaint.  (Doc. No. 8.)

Plaintiffs have responded in opposition (Doc. No. 10), and Defendants replied (Doc. No. 11).

For the following reasons, the motion is GRANTED in part and DENIED part.

## I.  **Complaint Allegations**

Defendants Mr. Rajeev Bhatia and Mrs. Sapna Bhatia live in Canada.  Their daughter,

Soma Chhaya, lives in the United States.  (Doc. No. 2 at ¶¶ 1, 13, 14, 20.)  Chhaya is estranged

from her parents.  (*Id.* ¶ 21.)  Among other things, the Bhatias disapprove of Chhaya's

relationship with Antoine Martel, who is one of the plaintiffs in this matter.  (*Id.* ¶¶ 1, 22.)

In 2023, Chhaya sued Mrs. Bhatia in state court in Cuyahoga County ("State Court

Case").  (*Id.* ¶ 24; Doc. No. 10-2.)  Chhaya sued to recover real properties that Mrs. Bhatia was

alleged to have unlawfully transferred to herself.  (Doc. No. 10-2 at 153, 155.)   Title to that real

estate previously had been held by a company called HELOC Home Services LLC ("HELOC"),

in which Chhaya was the sole member-owner.  (*Id.* at 153-54.)  However, Mrs. Bhatia – with an

Ohio attorney – signed and recorded a deed that transferred to herself eight properties owned by

HELOC.  (*Id.* at 155.)  Mrs. Bhatia or her counsel prepared the transfer documents which falsely

1

designated Mrs. Bhatia as a member of HELOC – *i.e.*, as being an authorized signatory for the company.  (*See id.*; *id.* at 209-16.)  Mrs. Bhatia did not challenge personal jurisdiction in the State Court Case.  (Doc. No. 10 at 133, 134.)[1]

On February 9, 2023, the Cuyahoga Court of Common Pleas entered a preliminary injunction against Mrs. Bhatia prohibiting such conduct.  (Doc. No. 2 at ¶ 24.)  The case was mediated in Cleveland and apparently settled.  (Doc. No. 10 at 134, 136.)  Chhaya and the Bhatias had other pending litigation against one another in state court in Macomb County, Michigan.  (*Id.* at 134 n.10; Doc. No. 10-3.)

Chhaya is in a relationship with Plaintiff Antoine Martel.  (Doc. No. 2 at ¶ 1, 22.)  Antoine and his brother Eric own businesses that hold real property in Ohio and several other states.  (*Id.* ¶¶ 2, 25.)  The Martel brothers live in Florida.  (*Id.* ¶¶ 5, 11.)  Antoine and Eric own several companies that are named plaintiffs in this action.  (*Id.* ¶¶ 3-12.)

The Martel companies are each organized under Wyoming or Nevada law.  (*Id.* ¶¶ 3-4, 6-10.)  The brothers are members and/or shareholders of the following Plaintiff entities: Martel Family Realty, LLC; MartelFund, LLC; Martel Enterprises, Inc.; Martel Endowment Fund, LLC; MFR 5, LLC; MartelRealEstate, LLC; and Martel Mentorship, LLC.  (*Id.*; *id.* ¶ 12.)

Two of those companies are alleged to be licensed by the Ohio Secretary of State:

3.  Martel Family Realty, LLC is a limited liability company formed under the laws of the state of Nevada and licensed to transact business in the State of Ohio.

4.  MFR 5, LLC is a limited liability company formed under the laws of the state of Wyoming and licensed to transact business in the State of Ohio. MFR 5, LLC owns real property in Cuyahoga County, Ohio.

---

[1] Plaintiffs rely on Mrs. Bhatia's consent or non-challenge to the personal jurisdiction of the state court in Cleveland, Ohio as a basis to deem the Bhatias amenable to this Court's personal jurisdiction.  (Doc. No. 10 at 133, 134.)

2

(*Id*.)  There is no allegation that MartelFund, LLC; Martel Enterprises, Inc.; Martel Endowment Fund, LLC; MartelRealEstate, LLC; and Martel Mentorship, LLC are similarly licensed with the State of Ohio.  (*See id.* ¶¶ 6-10.)

The Complaint alleges that "Plaintiffs' principal place of business is Cuyahoga County, Ohio."  (*Id.* ¶ 17.)  It is alleged that Plaintiffs own multiple pieces of real estate in Cleveland, which they operate as rental properties.  (*Id.* ¶¶ 2, 25, 32.)  One entity is alleged specifically to hold Cleveland real estate:  "MFR 5, LLC owns real property in Cuyahoga County, Ohio."  (*Id.* ¶¶ 4, 32.)

The Complaint alleges that the Bhatias directed tortious actions at Plaintiffs – including torts directed at the Martels and their companies holding or managing Ohio properties:

29.  Defendants continuously file false and fraudulent forms with various secretary of state offices around the country to alter the corporate registration of the entity Plaintiffs.

30.  Because the various secretary of state offices have little to no verification procedures, Defendants are free to file whatever forms they like altering the registration of entities that they have no interest in or control over.

31.  Defendants' false corporate registration filings are designed to 1) harass Antoine and Eric and 2) allow Defendants to pose as officers or owners of the entities to execute quit-claim claim deeds transferring property owned by the entities to Defendants.

32.  For example, MFR 5, LLC owns sixteen separate properties in Cuyahoga County, Ohio. Defendants have filed forms with the secretary of state's office changing the mailing address, email, and registered agent for the company so that correspondence and notifications related to the MFR 5, LLC will not be received by Plaintiffs.  Once that step is complete, Defendants [would be] free to change the entities' ownership and transfer the entities assets without notice being sent to Plaintiffs.

33.  Defendants falsify Eric and Antoine's signatures on the documents they file or falsify the names of other individuals.

34.  Defendants have already been able to successfully utilize this unlawful scheme of fraudulently registering entities in their name and then quit-

3

> claiming properties to gain control of properties owned by [their daughter's] companies.

(*Id*.)

The Complaint also alleges that Defendants provided false information to New Jersey authorities to create a false impression that Defendants did not pay owed taxes in New Jersey. (*Id*. ¶¶ 41-50.)  Further, Defendants sent notes and letters suggesting that Antoine or Eric engaged in some sort of embezzlement.  (*Id*. ¶¶ 51-56.)

Finally, the Complaint refers to online harassment and defamation by the Bhatias using social media.  (*Id*. ¶¶ 57-68.)  Defendants allegedly created fake profiles and user accounts on social media sites, where Defendants posted false and disparaging claims about Plaintiffs.  (*Id*. ¶¶ 58-59.)  Defendants apparently used an online photo of one of Plaintiffs' former employees to impersonate that former employee as if he made negative statements about Plaintiffs on the internet.  (*Id*. ¶¶ 61-62.)

## II.    Procedural History

The Complaint alleges ten causes of action: Fraud (Count One); Conversion (Count Two); Trespass to Chattels (Count Three); Abuse of Process (Count Four); Malicious Prosecution (Count Five); Interference with Contract (Count Six); Interference with Business Relationships (Count Seven); Defamation (Count Eight); Deceptive Trade Practices (Count Nine); and Conspiracy (Count Ten).  (*Id*.)

Regarding personal jurisdiction and venue, the Complaint alleged:

16.    Defendants Rajeev Bhatia and Sapna Bhatia reside in Ontario, Canada and also own property is California.

17.    Plaintiffs' principal place of business is Cuyahoga County, Ohio.

18.    Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because this is the judicial district in which a substantial part of the events giving

4

rise to the claim occurred and where a substantial part of the property that is the subject of the action is situated.

19. Defendants are subject to personal jurisdiction in Ohio, and under the long arm statute, because they caused tortious injury in the State of Ohio and within the jurisdictional limits of the Northern District of Ohio, Eastern Division. Defendants also transacted business in Ohio, including but not limited to such acts as hiring an Ohio lawyer to prepare a false and fraudulent transfer deed for real property located in Cuyahoga County, Ohio.

(*Id.*)

The Defendants moved for dismissal under Fed. R. Civ. P. 12(b)(2) and (3) for lack of personal jurisdiction and improper venue.  (Doc. No. 8-1 at 106-10.)  In the alternative, Defendants moved for dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of Counts One through Seven and Count Ten for failure to state a claim.  (*Id.* at 111-22.)  Defendants do not argue that the Court should evaluate their Rule 12 challenges, particularly under Rule 12(b)(2), individually.

## III.   Law and Analysis

### A.   Personal Jurisdiction

#### 1.   Standard of Review

The plaintiff bears the burden of establishing that personal jurisdiction exists.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The Sixth Circuit has explained the framework for evaluating a personal jurisdiction challenge.

> Motions to dismiss under Rule 12(b)(2) involve burden shifting.  The plaintiff must first make a *prima facie* case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence.  Once the defendant has met the burden, it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (quotation and

citations omitted); *see also Theunissen*, 935 F.2d 1454, 1458 (6th Cir. 1991) (holding that "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction").  The Court has discretion to direct how a challenge to personal jurisdiction will be presented and resolved.  *Id.* at 1458-59 (citations omitted); *see also Michigan Nat. Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989); *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

When, as is the case here, the Court elects to proceed on a motion that is not supported by any affidavit, "the pleadings . . . submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff." *Theunissen*, 935 F.2d at 1459; *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir. 1980); *accord Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 1994).  "Dismissal [is] only proper if all of the specific facts . . . alleged collectively failed to state a *prima facie* case for jurisdiction under the appropriate standards." *Theunissen*, 935 F.2d at 1459.  In this context, the burden on the plaintiff is relatively slight, and the plaintiff must make only a *prima facie* showing in order to defeat dismissal.  *See Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007).

### 2.      Defendants' Motion

Defendants argue that this Court lacks personal jurisdiction and is not a proper venue. The Bhatias, Canadian residents, are not "at home" in Ohio; more broadly, none of the actors live in Ohio and none of the actions complained of took place in Ohio.  (Doc. No. 8-1 at 104.) Plaintiffs do not allege specific facts plausibly supporting the exercise of personal jurisdiction over the Bhatias.  (*Id.* at 106.)  Any wrongful acts allegedly undertaken by the Bhatias against

the Martels would have necessarily occurred while both the Bhatias and the Martels were located outside of Ohio and were not Ohio residents.  (*Id.* at 107.)

To Defendants, the closest Plaintiffs come to alleging that the Bhatias committed a tortious act against any of the Plaintiffs in Ohio is that the Bhatias "have filed forms with the secretary of state's office changing the mailing address, email, and registered agent for the company so that correspondence and notifications related to [Plaintiff] MFR 5, LLC will not be received by Plaintiffs."  (*Id.* at 109; Doc. No. 2 at ¶ 32.)  Yet the allegedly falsified form for MFR 5, LLC was one filed with the Wyoming Secretary of State - not the Ohio Secretary of State.  (Doc. No. 8-1 at 109; Doc. No. 2-2 at 23.)  The false forms listed an address in California, where the Bhatias own a second home.  (*Id.*)  Even assuming that the Bhatias were the ones who filed the false papers, the Complaint does not allege facts showing that an alleged tortious act was committed inside Ohio.  (Doc. No. 8-1 at 108.)

Defendants' motion is not a supported by an affidavit.  Instead, Defendants advise the Court that "[t]he grounds in support of the Defendants' Motion to Dismiss Complaint (the "Motion") are set forth in the accompanying Memorandum in Support."  (Doc. No. 8 at 98.)  In other words, the grounds for Defendants' position are attorney argument, statutory provisions, and case law.  (*See* Doc. No. 8-1.)

Defendants attach one document as Exhibit 1 to their motion, yet there is no affidavit attesting to the authenticity or accuracy of that document.  (*See* Doc. Nos. 8-1, 8-2.)  Buried in a footnote, the motion implies that its attachment is a "registration on file with the Ohio Secretary of State's office," but the motion curiously does not say that overtly.  (Doc. No. 8-1 at 109 n.2.)  Although there are doctrinal bases to deem a document self-authenticating, *see generally Williams v. Long*, 585 F. Supp. 2d 679, 686 (D. Md. 2008) (collecting authorities), Defendants'

7

motion never asks this Court to deem the attachment as such.  Further, the motion never uses the word "evidence."  (*See* Doc. Nos. 8, 8-1, 8-2.)  Nor does the motion request judicial notice.  (*Id.*)

Defendants did not purport to support their motion with evidence.  It follows that this is not a "properly supported motion" within the meaning of precedents like *Malone*, 965 F.3d at 504, and *Theunissen*, 935 F.2d at 1458.  Accordingly, this is not a situation that deprives Plaintiffs of the option to stand on their pleading.  Nor does the burden shift back to Plaintiffs to, "by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Malone*, 965 F.3d at 504.

### 3.    Plaintiffs' Opposition

Plaintiffs point out that the Defendants' only evidence in support of their motion to dismiss is the Ohio Secretary of State registration for Plaintiff MFR 5, LLC.  (Doc. No. 10 at 138.)  The fact that MFR 5, LLC was organized in Wyoming does not mean that it does not transact business in Ohio or have its principal office in Ohio.  (*Id.*)  It is common for companies formed in other states (particularly Delaware) to transact business in Ohio.  (*Id.*)

Plaintiffs say they are Cleveland companies.  (*Id.*)  They own real estate in Cleveland, collect rent in Cleveland, and manage property in Cleveland.  (*Id.*)  Plaintiffs publish books, videos, and podcasts about the Cleveland real estate market.  (*Id.*)  It is also the location of the MFR 5 properties that Plaintiffs say Defendants took initial steps to steal.  (*Id.* at 133.)

Plaintiffs characterize the Bhatias' actions against their daughter's LLC and properties as part of the same pattern, scheme, and conspiracy Defendants also waged against the Martels. (*Id.* at 135.)  The Bhatias transferred eight Cleveland properties from their daughter to their own name.  (*Id.* at 133-34.)  Plaintiffs allege that the Bhatias were in the process of attempting to do the same thing to Plaintiffs' Cleveland properties.  (*Id.*)  Defendants filed false and forged

corporate registration documents with the Wyoming and California secretaries of state.  (*Id.*)  But

the object of the scheme was aimed at Cleveland, where the Martels' company MFR 5, LLC's

real estate assets were located.  (*Id.* at 133-34, 138.)  Cleveland also was where the defamation

and harassment caused injury and disruption to Plaintiffs' business, reputation, and properties.

(*Id.* at 144.)

Plaintiffs also stress that the Bhatias own real property in Cleveland Ohio.  (*Id.* at 133-

34.)  Yet the Complaint alleged that the Bhatias own real property in California – without

mention of Ohio.  (Doc. No. 2 at 6 ¶ 16.)  In response to the motion to dismiss, Plaintiffs point to

what they say was an admission of such Ohio property ownership by the Bhatias in their verified

pleading filed in another court.  (Doc. No. 10 at 134, 136, 146.)

### 4.    Specificity of the Complaint

Defendants try to heighten the Plaintiffs' burden based on a sentence from the Sixth

Circuit's decision in *Palnik v. Westlake Ent., Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009).  (Doc.

No. 8-1 at 107-09.)  It is true that *Palnik* indicates that "it remains the plaintiff's burden and the

complaint must have 'established with reasonable particularity' those specific facts that support

jurisdiction."  *Id.*  But *Palnik* is not a published decision like *Malone*, 965 F.3d at 504, and

*Theunissen*, 935 F.2d at 1458.[2]

The facts of *Palnik* do not resemble the facts alleged in this case.  There, a movie

distributed nationally contained the plaintiff's copyrighted songs without permission.  *Id.* at 250-

---

[2] "[T]he panel's decision was unpublished and, therefore, not binding."  *United States v. Flore*s,
477 F.3d 431, 433 (6th Cir. 2007).  "Although unpublished decisions do not have precedential
authority, they may be considered for their persuasive value . . . ."  *U.S. v. Keith*, 559 F.3d 499,
505 (6th Cir. 2009).

51.  Moreover, *Palnik*'s focus on the complaint is not necessarily a boon for the defendant

challenging jurisdiction.  *Palnik* reasoned:

> We are to determine whether [plaintiff] has made [a] *prima face* case based on [plaintiff's] allegations, and only [plaintiff's] allegations; *the defendants' affidavits contradicting the facts are irrelevant.*  To be entitled to proceed with his suit, [plaintiff] must have alleged specific facts that establish with reasonable particularity that the defendants directed [their copyright infringing works] to Ohio.

344 F. App'x at 251 (emphasis added).

In addition, the Court has reviewed the published decision from the Sixth Circuit that was

cited in *Palnik*.  *See id.* (citing *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544,

549 (6th Cir. 2007)).  *Air Products* does not have a singular focus on the plaintiff's complaint

like *Palnik*, nor does it state the need for specific allegations contained within the complaint.

*See id.*  Instead, *Air Products* confirms that –

> the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991).  In that instance, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal."  *Id.* at 1459.

*Palnik*, 344 F. App'x at 251.  Other published decisions cited in *Palnik* likewise tilt the balance

in favor of plaintiffs.  *See, e.g., Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th

Cir. 2002) ("Under these circumstances, this court will not consider facts proffered by the

defendant that conflict with those offered by the plaintiff, and will construe the facts in the light

most favorable to the nonmoving party in reviewing a dismissal pursuant to Rule 12(b)(2).")

(citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

### 5. Ohio Long-Arm Statute

"When sitting in diversity, a federal court may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021).  Thus, "[f]ederal courts start with state law in determining whether they have personal jurisdiction over a defendant in a diversity case." *Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023).

An Ohio court has personal jurisdiction over a nonresident defendant when the long-arm statute, Revised Code § 2307.382, and court rules confer jurisdiction, and the exercise of jurisdiction comports with due process under the Fourteenth Amendment.  *Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E.2d 784 (Ohio 2010).

Ohio's long-arm statute confers personal jurisdiction over an out-of-state defendant as follows:

> (A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> > (1)  Transacting any business in this state;
> >
> > (2)  Contracting to supply services or goods in this state;
> >
> > (3)  Causing tortious injury by an act or omission in this state;
> >
> > (4)  Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
> >
> > (5)  Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial

11

revenue from goods used or consumed or services rendered in this state;

(6)    Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state;

(7)    Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which the person commits or in the commission of which the person is guilty of complicity.

(8)    Having an interest in, using, or possessing real property in this state;

(9)    Contracting to insure any person, property, or risk located within this state at the time of contracting.

(B)    For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state.  As used in this division, "principal" and "sales representative" have the same meanings as in section 1335.11 of the Revised Code.

(C)    In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution.

Ohio Rev. Code § 2307.382 (as in effect since April 7, 2021) (emphases added).[3]

---

[3] Previously, it was settled law that Ohio's statutory framework for personal jurisdiction did not extend to the outer reach permissible under the federal Due Process Clause of the Fourteenth Amendment.  *See, e.g., Conn v. Zakharo*v, 667 F.3d 705, 718 (6th Cir. 2012) ("We must follow Ohio Supreme Court precedent with reference to Ohio law; it is clear that under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute."); *Kauffman Racing Equip., L.L.C. v. Roberts*, 930 N.E.2d 784 (Ohio 2010).  But effective in 2021, Ohio changed course and added the above-quoted language to Section 2307.382(C).  *See* 2020 Ohio Laws File 44 (Am. H.B. 272); 2020 Ohio Laws File 94 (Am. Sub. S.B. 10).

**6.      Injury in Ohio Caused by Out-of-State Conduct**

Sections (A)(4) and (A)(6) of the Ohio long-arm provide jurisdiction where the defendant's (or the defendant's agent's) out-of-state actions cause injury within Ohio.  Section (A)(4) provides jurisdiction if the defendant either regularly does or solicits business; engages in any other persistent course of conduct; or derives substantial revenue from goods or services rendered in Ohio.  *See id.*  Section (A)(6) provides jurisdiction if the defendant had an injurious purpose and could reasonably foresee injury to someone in Ohio.  *See id.*

For these provisions, it is no answer that a defendant might live and conduct themselves outside of Ohio.  Under these sections, "the defendant's act *must* occur *outside* Ohio."  1 Baldwin's Oh. Civ. Prac. § 4.3:78 (emphasis added).  To exercise personal jurisdiction under Section (A)(4) "require[s] a finding that (1) an act or omission outside the state caused tortious injury in Ohio, and (2) the defendant regularly conducted activity in Ohio."  *Est. of Poole v. Grosser*, 731 N.E.2d 226, 229 (Ohio Ct. App. 1999).  "Although [the Sixth] Circuit has not had much occasion to consider the contours of § 2307.382(A)(6), the district courts have given it considerable attention and generally taken a broad approach to its application."  *Schneider v. Hardesty,* 669 F.3d 693, 700 (6th Cir. 2012) (quotation and citations omitted).

**a)      Corporate Registration Forms**

Plaintiffs contend that Defendants filed false documents with the Wyoming Secretary of State to change the company address information for the corporate registration of MFR 5, LLC.  (*See* Doc. No. 10 at 138-39.)  MFR 5, LLC owns and operates rental properties in Ohio.  (*Id.*)  In response to the motion, Plaintiffs elaborated on the specific references from the Complaint and exhibits, as well as inferences to be drawn.  (*See id.*)

Under the laws of the states where Defendants filed statements regarding the Martel companies with the respective Secretaries of State, filing false statements to the state government is a crime. *See, e.g.*, WY Stat. § 6-5-308(a)(ii)-(iii). If a defendant commits a criminal act outside of Ohio that injures someone in-state, that injury is tortious and can come within the meaning of Sections (A)(4) and (A)(6). *See Goddard v. Goddard*, 195 N.E.3d 1106, 1111 (Ohio Ct. App. 2022); *Haas v. Semrad*, 2007-Ohio-2828, 2007 WL 1653032 at *3-*5 (Ohio Ct. App. June 8, 2007).

The next issue is whether such injurious effects were sustained in Ohio. The Complaint alleges that Plaintiffs' principal place of business is in Cuyahoga County, Ohio. (Doc. No. 2 at 6 ¶ 17.) Ohio is the location of working assets owned by the Martel companies and ultimately by the Martel brothers who own those companies. "Plaintiffs own fourteen properties in and around Cleveland." (Doc. No. 10 at 133.)

In an instructive decision, the Sixth Circuit held that when a plaintiff's trademark is infringed, the harm is economic. And that "injury occurs both in places where the plaintiff does business and in the state where its primary office is located." *Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2002) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)). The sort of injury alleged here bears some resemblance to *Bird*, which covered trademark infringement and unfair competition. 289 F.3d at 877. Just as trademarks serve as designations among consumers, corporate registration information and registered agents serve as designations for governments and commercial actors. False designations and false statements about a business can result in confusion, misattribution, and lost business opportunities.

The alleged wrongdoing in this case is somewhat akin to a false designation of origin, and the Sixth Circuit has recognized how false labels of ownership can cause consumer confusion and business injuries.

> The present case is slightly different from the run-of-the-mill Lanham Act case, and, as it happens, much simpler.  Here, the defendant has not produced a product to which he has applied a mark so like the plaintiff's that the public is likely to believe that the product was produced by the plaintiff. Rather, the defendant has taken the plaintiff's product and has represented it to be his own work.  It is difficult to imagine how a designation of origin of a product could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the product.  . . .

> Furthermore, it is obvious beyond dispute that by taking Johnson's name and seal off of the plans and replacing them with his own, Tosch intended for people to assume that the plans were his, and not Johnson's.  Indeed, this Court is hard-pressed to imagine what effect these actions could possibly have other than to convince anyone who looked at the plans that they were Tosch's work. Few are the cases demonstrating a more obvious and imminent likelihood of confusion.

> For these reasons, the district court was correct to find Tosch liable under the Lanham Act for false designation of origin.

*Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998).

The nature of Plaintiffs' business and working assets would have put Defendants on notice that the harm resulting from their alleged actions could be felt in Ohio.  Plaintiffs own rental properties in the Cleveland area.  (Doc. No. 2 at 5 ¶¶  2, 4, 5.)  If a commercial or residential landlord were to lose government licenses, or lose insurance coverage, or lose a building to a tax lien foreclosure, the brunt of the injury will be felt not just by the owners but also by the employees managing those properties and the tenants occupying those.  Here, some of the business operations, employees, and tenants who may have been injured are located in Cuyahoga County.  (*See id.*)

Defendants' knowledge and understanding of the likely business consequences does not follow simply because Antoine Martel dates their daughter.  In Plaintiffs' opposition to the motion, they listed the addresses of their own properties as well as the addresses of properties owned or operated on behalf of Defendants.  (*See* Doc. No. 10 at 133.)  In their reply, Defendants concede and confirm their ownership of eight residential properties. (Doc. No. 11 at 260 n.2.)  A review of the list of addresses shows that Defendants own properties in several of the same areas of Cleveland and in some of the same suburbs as Plaintiffs' properties held by MFR 5, LLC.  At this *prima facie* stage, the papers reveal Defendants to be competing in the same real estate markets as Plaintiffs.

At a minimum, Defendants' admission to owning those properties suffices to establish a *prima facie* basis that they regularly do or solicit business and are engaged in a persistent course of conduct (ownership of eight rental properties).  Ohio Rev. Code § 2307.382(A)(4).  As in *Bird*, the "allegations support a finding that the . . . defendants 'regularly conducted activity in Ohio.'"  289 F.3d at 876.  For the reasons above, the Court finds that Plaintiffs have met the slight burden of showing a *prima facie* basis for personal jurisdiction under Section (A)(4).

The Complaint also alleged that at least one of the motivations and purposes for the Defendants' alleged acts was to harass and ultimately steal from their daughter's partner Antoine Martel.  (*See* Doc. No. 2 at ¶¶ 1-2, 4, 12, 22, 25-28, 33, 38, 55-56, 64-68.)  The Complaint alleges that Defendants wish to harass Martel, embarrass him, and steal assets from him.  (*See id.*)  The Complaint alleges a false corporate registration address change filed for MFR 5, LLC, a company that the Martel brothers co-own through which they hold title to Ohio residential properties.  The Complaint sets forth a facially plausible set of allegations that Defendants tinkered with the corporate formalities for MFR 5 as a prelude to take assets from that company.

16

If that were proved true, then Defendants would have caused harm to Martel by harming MFR 5, which has a principal place of business in Cuyahoga County.  In short, some of the alleged injury intended for Martel was designed to injure his Ohio holdings.

For the reasons above, the Court finds that Plaintiffs have met their burden of showing a *prima facie* basis for personal jurisdiction under Section (A)(6).

### b)       Taxes in Other States

Plaintiffs argue that "Defendants have not stopped their campaign of harassment and continue to file fraudulent tax complaints and corporate documents including a new phony tax complaint in New York as recently as June."  (Doc. No. 10 at 132; *see also* Doc. No. 2 at 9-1 ¶¶ 41-50.)[4]

Unlike the alleged altering of corporate registrations for companies like MFR 5, LLC, Plaintiffs have not tied the alleged specious tax complaints to any ramifications in or connections to Ohio.  (*See id.*)  For example, Plaintiffs do not allege that a particular Plaintiff accused of not paying taxes in New York or New Jersey either own or operate the properties located in Ohio.  Moreover, Plaintiffs provide no argument that if the Bhatias initiated these faux tax issues that they did so to harm Plaintiff-owned assets or operations in Ohio.  Plaintiffs make no factual or legal argument to show that those New York and New Jersey actions were directed toward Ohio.

---

[4] In *SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft*, 563 F.3d 211 (6th Cir. 2009), two members of the panel agreed that "personal jurisdiction must be proper as to each claim."  *See id.* at 217, 219; *accord Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) ("Is specific personal jurisdiction a claim-specific inquiry? We conclude that it is. A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."); *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 655 (N.D. Ohio 2019); *Susan McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 879 (W.D. Tenn. 2017).  Although the parties here did not argue the point, this Court has analyzed personal jurisdiction with respect to each type of tort claim in the Complaint.

*Compare Blessing v. Chandrasekhar*, 988 F.3d 889, 906 (6th Cir. 2021) *with Johnson v. Griffin*,

85 F.4th 429, 434 (6th Cir. 2023).

Even assuming that false statements in support of specious tax complaints are tortious,

Plaintiffs have not sufficiently alleged – even on a *prima facie* basis – any injury in Ohio

resulting from those.  Accordingly, there is no basis to assert specific personal jurisdiction under

Section 2307.382(A) over Defendants with respect to the tax claims.

While there might be a basis to exercise personal jurisdiction under Section 2307.382(C),

which is coextensive with the Due Process Clause of the Fourteenth Amendment, Plaintiffs

chose not to plead Subsection (C) as a basis for personal jurisdiction.  (*See* Doc. No. 2 at 6 ¶ 19.)

Plaintiffs' claims regarding the New York and New Jersey tax issues are dismissed

without prejudice for lack of personal jurisdiction.  There may be a different jurisdiction in

which such claims properly may be heard, but it is not in Ohio.

### c) Letters

Plaintiffs' Complaint asserts claims of harassment based on notes mailed to them by

Defendants:

51. Defendants have sent a number of childish harassing letters to Antoine, Eric and their family.

52. Some of these letters are attached hereto as Exhibit 3.

53. For example, Defendants sent an anonymous letter to Antoine's brother Etienne which states, "[b]e very careful. Your brother is stealing money from you.  Ask him to show you his individual tax returns for the last few years.  He is taking much more than his 'fair share'" (emphasis in original).

54. Other letters accuse various family members of stealing from each other and utilize various font sizes to emphasis the point.

55. In another example, Defendants circulated correspondence related to Antoine's personal earnings in an attempt to embarrass him.

56.  These amateurish attempts at harassment are meant to cause fights and mistrust between the various members of the Martel family.  This is yet another part of Defendants' vendetta against Plaintiffs.

(Doc. No. 2 at 10-11.)  Pictures of the letters and envelopes are contained in Doc. No. 2-4.

Plaintiffs reside in Florida.  (*Id.* ¶¶ 5, 11.)  The letters were sent to destinations in Florida and Canada.  (*See* Doc. No. 2-4 at 61, 63, 66.)  One letter was sent to Etienne Martel accusing his brother Antoine of stealing from Etienne.  (*Id.* at 60-61.)  There is no allegation or argument that these letters were mailed to an address in Ohio.  The exhibits to the Complaint show letters sent to addresses outside Ohio.  (*See* Doc. No. 2-4.)  Nor is there any allegation or argument that these letters were shown to Plaintiffs' tenants or business colleagues.  There is no allegation in the Complaint nor any plausible legal theory in Plaintiffs' brief indicating that these letters caused harm in Ohio.

These letters do not provide a basis to assert personal jurisdiction over Defendants.  Because there was no alleged injury in Ohio resulting from these letters, there is no personal jurisdiction under either Section (A)(4) or (A)(6).  For the reasons above, Plaintiffs' claims regarding these unsigned letters are dismissed without prejudice for lack of personal jurisdiction.

### d)  Online Defamation and Harassment

Plaintiffs' Complaint alleges various forms of online harassment and defamation.  (Doc. No. 2 at 11-12 ¶¶ 57-68.)  These include using a false profile and false claims of being Plaintiffs' employee.  (*See id.*)

Creating distrust and impugning business reputations could have an injurious effect in Ohio, where Plaintiffs have employees and tenants.[5]  This suffices for a *prima facie* showing of

---

[5] In *Johnson v. Griffin*, 85 F.4th 429, 434 (6th Cir. 2023), the Sixth Circuit held that making statements online that result in reputational injury sufficed to establish personal jurisdiction where the defendant knew that the effect of her social media statements would harm plaintiff

personal jurisdiction under Section (A)(4). Moreover, because Plaintiffs pleaded Defendants' personal and tortious purpose, they have also made a *prima facie* case for jurisdiction under Section (A)(6).

For the reasons above, the Court finds that Plaintiffs have met their burden of showing a *prima facie* basis for personal jurisdiction over the online harassment and defamation claims under Sections (A)(4), (A)(6), and (C) of the Ohio long-arm statute.

### B. Venue

A "Rule 12(b)(3) motion to dismiss for improper venue is simply the procedural vehicle by which to challenge improper venue; the Rules of Civil Procedure do not contain any venue provisions or requirements. The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue." *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 538 (6th Cir. 2002). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws . . . ." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). "This question – whether venue is 'wrong' or 'improper' – is generally governed by 28 U.S.C. § 1391." *Id.*

Defendants here move to dismiss based on improper venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought.").

A civil action may be brought in –

---

within his home state where he was an officer of a company. The exercise of jurisdiction in that case was held to be permissible under the Due Process Clause. *See id.*

(1)  a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Defendants do not reside in the United States any longer.  Previously they lived in California.  (Doc. No. 8-1 at 108.)  Today, Defendants reside in Canada.  (*Id.*; Doc. No. 2 at 6 ¶¶ 13-14.)  Section 1391(b)(1) therefore does not apply.

Defendants argue that no events occurred in Ohio, and so venue is not proper here under Section 1391(b)(2).  (Doc. No. 8-1 at 110.)  Plaintiffs do not respond.  (*See* Doc. No. 10.)  The Court concludes that venue is not proper under Section 1391(b)(2).[6]

Nonetheless, venue in the Northern District of Ohio is proper under Section 1391(b)(3). "The structure of the federal venue provisions confirms that they alone define whether venue exists in a given forum.  In particular, the venue statutes reflect Congress' intent that venue should always lie in *some* federal court whenever federal courts have personal jurisdiction over the defendant."  *Atl. Marine*, 571 U.S. at 56 (2013).

Because Defendants are subject to the personal jurisdiction of this Court, this Court is a proper venue under Section 1391(b)(3).

---

[6] Neither side addressed whether the rental properties owned by MFR5, LLC could be deemed "the subject of the action" to permit venue under Section 1391(b)(2).

### C.       Failure to State a Claim

Defendants move for dismissal under Fed. R. Civ. P. 12(b)(6) on each of the ten causes of action in the Complaint.

### 1.       Standard of Review

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this standard is a liberal one, a complaint must still provide the defendant with "enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

The concept of facial plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [of liability]." *Twombly*, 550 U.S. at 556. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). As such, the court will not permit

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Id.* at 678 (citations omitted).

If a plaintiff pleads facts that reveal a flaw in the claim or substantiate a defense, she may plead herself out of federal court. In other words, "sometimes the allegations in the complaint affirmatively show that the claim is [deficient or disallowed as a matter of law]. When that is the case . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law.").

The Sixth Circuit has reminded courts that a "Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *Id.*; *Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 383 (6th Cir. 2017).

### 2. Fraud

Defendants urge that Count One should be dismissed because Plaintiffs fail to plead with particularity. (Doc. No. 8-1 at 111-13; Doc. No. 11 at 263-65.) *See generally* Fed. R. Civ. P. 9(b). In response, Plaintiffs' opposition brief sets forth the following, which they distill from exhibits attached to their Complaint.

> On December 23, 2022, at 5:00 pm Defendants published a false and fraudulent written statement that Plaintiff Martel Family Realty, LLC's principal address is 21515 Hawthorn Avenue, Suite 200, Torrance, California

90503, and that its agent for service of process is Karen Yu at that same address.  Doc. #2-2.  Karen Yu is a CPA in California.

On December 30, 2022, at 5:00 PM Defendants published a false and fraudulent written statement that Plaintiff MFR 6, LLC's principal address 21515 Hawthorn Avenue, Suite 200, Torrance, California 90503, that its mailing address for its principal executive office is 1000 West 8th Street, Unit 2502, Los Angeles, California 90017, and that its agent for service of process is Karen Yu at the Hawthorn Avenue address.  Doc. #2-2.  Defendants also claimed that the agent for service of process is "MARTELINVEST 1 LLC." *Id*.

On January 5, 2023, Defendants published a false and fraudulent written statement that Plaintiff Martel Endowment Fund, LLC's mailing address is 21515 Hawthorn Avenue, Suite 200, Torrance, California 90503, its phone number is 650.888.0750, and is email address is etienne@martelturnkey.com.  Doc. #2-2.

On January 17, 2023, Defendants published a false and fraudulent written statement that Plaintiff Martel Endowment Fund, LLC's principal address and mailing address is 21515 Hawthorn Avenue, Suite 200, Torrance, California 90503, that Martel Endowment Fund, LLC's phone number is 424.254.9004, and that its email address is karen@karenyucpa.com.  Doc. #2-2.

On January 17, 2023, Defendants published the same type of false and fraudulent written statements concerning Martel Enterprises, Inc., MFR 5, LLC, MartelRealEstate, LLC, MartelFund, LLC., Martel Family Reality, LLC, MFR 2, LLC, and Martel Mentorship, LLC.  Doc. #2-2.

(Doc. No. 10 at 138-39.)

Defendants argue that the articulation came in Plaintiffs' response brief and was not laid out this way in the Complaint.  (Doc.  No. 8-1 at 111-12; Doc. No. 11 at 262 (citing *Shaaban v. U.S. Citizenship & Immigr. Servs.*, No. 3:20-cv-2406, 2022 WL 254092, at *3 (N.D. Ohio Jan. 27, 2022), *aff'd*, No. 22-3261, 2023 WL 2634367 (6th Cir. Feb. 3, 2023).)  The situation here is not akin to *Shaaban*, where the plaintiff "did not include any allegations in his complaint with respect to any" of the immigration proceedings he raised in an opposition brief to a motion to dismiss on limitations grounds.  Basically, that plaintiff raised a new subject not found in his complaint.  2022 WL 254092 at *1, *3.  Here, the statements set forth above are drawn from the

allegedly false and fraudulent forms filed with Secretaries of State, which are attached to the Complaint at Doc. No. 2-2. The opposition brief here does not result in a *de facto* amendment of the Complaint, as Defendants characterize. (Doc. No. 11 at 262.)

Defendants' other argument is that the false statements listed above were not made *to Plaintiffs*, but rather to the Secretaries of State. (Doc. No. 8-1 at 113; Doc. No. 11 at 264-65.) Defendants' view does not correspond to how Ohio courts lay out the elements of fraud. There is, of course, a requirement that a false statement be made with "the intent of misleading another" that is relied upon and results in harm to the plaintiff.

> The elements of fraud are (1) a representation of fact (or where there is a duty to disclose, concealment of a fact); (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the misrepresentation (or concealment); and (6) resulting injury proximately caused by the reliance.

*Malek v. eResearch Tech., Inc.*, 199 N.E.3d 573, 580 (Ohio Ct. App. 2022).

But it is not express or obvious from the authorities cited by Defendants that only statements *directed to* a plaintiff can be the basis for a fraud action. Defendants do not develop a legal argument or provide legal authority to rule out a fraud claim based on false statements *about* a plaintiff which another person reasonably relied upon and which injured the plaintiff.

Defendants cite an unpublished district court opinion dealing with a factually inapposite situation. *See Boynton v. Alacrity Servs., LLC*, No. 1:12-cv-2214, 2013 WL 5325465, at *7 (N.D. Ohio Sept. 20, 2013). *Boynton* was an insurance dispute, and so virtually everything turned on policy language. *Id.* at *1-*3. The court noted that the defendant was not entitled to settlement proceeds, and so representations about the amount of those proceeds was not actionable. *Id.* at *3. *Boynton* did not address the situation here, where false statements *about* the plaintiff (rather than *to* the plaintiff) were relied upon to the detriment of the plaintiff.

Moreover, Ohio permits "an action for fraud and deceit . . . not only as a result of affirmative misrepresentations, but also for negative ones, such as the failure of a party to a transaction to fully disclose facts of a material nature where there exists a duty to speak." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1272 (Ohio Ct. App. 1996). When a person submits an amendment or revision to a corporate registration, there is a duty of truthfulness. *See, e.g.*, WY Stat. § 6-5-308(a)(ii)-(iii). If that person omits the fact that she has no role in the affected company and no authority to act on its behalf, then that would seem to satisfy Ohio black-letter law for a material omission.

At this stage, Plaintiffs have plausibly pleaded a fraud claim. *See Directv*, 487 F.3d at 476. The motion to dismiss Count One is denied.

### 3. Conversion

Defendants argue that Count Two is too vague to survive dismissal. (Doc. No. 11 at 265.) But Defendants' reply brief demonstrated that they comprehend the nature of the conversion claim. "The Complaint makes a singular reference to membership units and shares: 'Plaintiffs have an ownership of or right to possession of membership units, shares, and real property,' which the Bhatias allegedly converted by 'filing false and fraudulent corporate registration documents.'" (*Id.* (quoting Compl. ¶¶ 76-77).)

The Ohio Supreme Court explained the nature of this cause of action.

> Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner or the withholding of the property from the owner's possession under a claim inconsistent with the owner's rights. . . . [A]lthough the original rule at common law permitted only tangible chattels to be subject to conversion, it is now generally held that intangible rights which are customarily merged in or identified with some document may also be converted.

*Bunta v. Superior VacuPress, L.L.C.*, 218 N.E.3d 838, 844 (Ohio 2022) (quotations and citations

omitted).

Defendants point to caselaw indicating that Ohio does not permit a conversion claim for real property.  (Doc. No. 8-1 at 114.)  However, Ohio courts do permit conversion claims for corporate stocks and shares of ownership.  *See generally Robson v. Disc. Drug Mart, Inc.*, 224 N.E.3d 678, 686, 704-05 (Ohio Ct. App. 2023); *Am. Steel Foundries v. Hunt*, 79 F.2d 558, 561 (6th Cir. 1935) (citing Ohio authorities); *Lamprecht v. State*, 95 N.E. 656 (Ohio 1911) (syllabus); *Booth v. Cincinnati Fin. Co.*, 19 Ohio App. 130, 132 (1923), *aff'd*, 145 N.E. 543 (Ohio 1924).[7] In dispute over LLC membership interests, the Ohio Supreme Court "decline[d] to adopt the bright-line rule that a member's claimed right to compensation for his or her membership interest at dissolution can never be intangible property subject to conversion . . . ."  *Bunta*, 218 N.E.3d at 848.

*Bunta* and the corporate cases cited above suggest that ownership stakes in a limited liability company can be the subject of a conversion claim.  Moreover, the Ohio Court of Appeals has affirmed a verdict awarding damages on a conversion claim brought by an LLC member against another member for lost rental income that he argued should have become profit for the LLC.  *See AM & JV, LLC v. MyFlori, LLC*, 107 N.E.3d 125, 127 (Ohio Ct. App. 2018).

At this stage, Plaintiffs have alleged that by filing false changes to public registration records of Plaintiffs' LLCs, that Defendants wrongfully exercised dominion of Plaintiffs' personal, intangible property.  Given the allegations and exhibits in the Complaint, there is a plausible claim that "intangible rights which are customarily merged in or identified with some

---

[7] Other district courts in the Sixth Circuit have observed that LLC membership interests could likewise be the subject of a conversion action. *E.g., Brunswick TKTKonnect, LLC v. Kavanaugh*, 661 F. Supp. 3d 698, 704, 714 (W.D. Ky. 2023).

document [were] converted." *Bunta*, 218 N.E.3d at 844; *see also Directv*, 487 F.3d at 476.  The motion to dismiss Count Two is denied.

### 4.        Trespass to Chattels

"[T]o establish a trespass claim a property owner must prove an unauthorized intentional act and an intrusion that interferes with the owner's right of exclusive possession of their property." *B&N Coal, Inc. v. Blue Racer Midstream, LLC*, 222 N.E.3d 140, 148 (Ohio Ct. App.), *appeal not* allowed, 223 N.E.3d 491 (Ohio 2023).  "While authority under Ohio law respecting an action for trespass to chattels is extremely meager, it appears to be an actionable tort." *MCI WorldCom Network Servs., Inc. v. W.M. Brode Co.*, 411 F. Supp. 2d 804, 810 (N.D. Ohio 2006) (quoting *CompuServe, Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015 (S.D. Ohio 1997)).  Courts apply The Restatement (Second) of Torts section 217(b) to analyze this claim under Ohio law.  *Id.*

Defendants argue that Count Three "should be dismissed because Plaintiffs' Complaint does not actually allege that they were ever dispossessed of their property, nor does it clearly identify what property is in dispute."  (Doc. No. 8-1 at 114-15.)  As to the latter point, Defendants' own description of the conversion claim makes plain that Defendants understand that Plaintiffs base their claim on the period of time when Defendants allegedly changed public records for registered corporate addresses or agents.  (*See* Doc. No. 11 at 265.)

As to Defendants' first point, the facts are not yet fully clear.  Defendants do not present case law with analogous circumstances to demonstrate as a matter of law that this claim is not cognizable.  *See Directv*, 487 F.3d at 476.  The motion to dismiss Count Three is denied.

5.      **Abuse of Process**

The Ohio Supreme Court has held that "the three elements of the tort of abuse of process are: (A) that a legal proceeding has been set in motion in proper form and with probable cause; (B) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (C) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 118 (Ohio 1994). Federal courts apply those elements. *See, e.g., Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005).

As to the nature of a legal proceeding, Defendants rely in part on this Court's decision in *Nice v. City of Akron*, No. 5:21-cv-1887, 2023 WL 1768314, at *13 (N.D. Ohio Feb. 3, 2023). (Doc. No. 11 at 268.)  The abuse of process claims resolved in that opinion were brought against a prosecutor and a defense attorney.  2023 WL 1768314, at *1.  Given the nature of their jobs, court proceedings were the only domain in which they operated.  So this Court did not have occasion in that case to consider or make a ruling about all administrative agency actions or proceedings.  (*Cf.* Doc. No. 11 at 268.)

That said, Defendants' other authorities are persuasive.  Typically, "the term 'legal proceeding' as used to define the tort of abuse of process is confined to those proceedings where the judicial process is involved." *Lair v. City of Olmsted Falls*, No. 1:17-cv-1181, 2018 WL 11462327, at *12 (N.D. Ohio Mar. 28, 2018) (quoting *Farmer v. City of Cincinnati*, No. 1:04-cv-080, 2006 WL 3762131, at *6 (S.D. Ohio Dec. 21, 2006)).

In *Kensington Land Co. v. Zelnick*, an Ohio trial court analyzed in detail the question of whether the abuse of process tort in Ohio could be based on a nonjudicial action or proceeding. 94 Ohio Misc. 2d 180, 183, 704 N.E.2d 1285, 1288 (Ohio Ct. Com. Pl. 1997).  Based on a close

reading of Ohio Supreme Court decisions and other authorities, the state trial court concluded that nonjudicial actions could not be the basis for the tort under Ohio law.  *See id.* (collecting authorities).  *Kensington Land* continues to be cited by federal district courts for this point of law.  *See, e.g., Rashid v. United States*, No. CV 20-5947, 2021 WL 1382358, at *4 (D.N.J. Apr. 13, 2021); *Lair*, 2018 WL 11462327 at *12; *Farmer,* 2006 WL 3762131, at *6.

In response, Plaintiffs cite factually inapposite cases that do not involve the tort of abuse of process under Ohio law.  (Doc. 10 at 143-44 (citing cases).)  Plaintiffs do not provide the Court with legal authority that would render the tort applicable to the allegations here.

For the reasons above, Count Four is dismissed.

### 6.    Malicious Prosecution

In order to prevail on a claim for malicious prosecution of a civil action, a plaintiff must prove the following: (A) the defendant maliciously instituted the prior proceedings against the plaintiff, (B) lack of probable cause for filing the prior lawsuit, (C) the prior proceedings terminated in the plaintiff's favor, and (D) the plaintiff's person or property was seized during the course of the prior proceedings.  *Crawford v. Euclid Natl. Bank*, 483 N.E.2d 1168 (Ohio 1985); *Miller v. Unger*, 950 N.E.2d 241, 243 (Ohio Ct. App. 2011).

Defendants correctly point out that the Complaint does not allege that property was seized.  (Doc. No. 8-1 at 120).  Moreover, Plaintiffs do not allege or argue that the New Jersey tax matter has been resolved in their favor.  They instead suggest that the fate of the New Jersey tax issue remains unclear due to an acrimonious tax investigator.  (*Id.*; *see also* Doc. No. 2; Doc. No. 10 at 144.)

For the reasons above, Plaintiffs have not set forth a plausible claim that meets the required elements for malicious prosecution.  Count Five is dismissed.

30

7.        **Interference with Contract and Business Relationships**

Defendants seek dismissal of Counts Six and Seven.  (Doc. No. 8-1 at 116-17.)  "The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995).

A claim for tortious interference with a contractual relationship requires proof of the following elements: (A) the existence of a contract, (B) the wrongdoer's knowledge of the contract, (C) the wrongdoer's intentional procurement of the contract's breach, (D) the lack of justification, and (E) resulting damages.  *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853 (Ohio 1999).  "The elements of a claim of tortious interference with a business relationship are nearly identical."  *White v. Adena Health Sys.*, No. 2:17-cv-593, 2018 WL 3377087, at *13 (S.D. Ohio July 11, 2018).

> The tort of interference with business relationship occurs when a person, without privilege to do so, induces or otherwise purposefully causes a third person not to enter into or continue a business relationship with another.  The elements of tortious interference with a business relationship are (1) a business relationship, (2) the tortfeasor's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and, (4) damages resulting therefrom. The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract.

*Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 780-81 (Ohio Ct. App. 2002) (citations omitted).

Defendants correctly point out that neither the Complaint nor Plaintiffs' brief specifies any particular contract that was breached or prospective business opportunity that was lost. (Doc. No. 8-1 at 116-17; Doc. No. 11 at 262, 266; *cf.* Doc. Nos. 2, 10.)  The Sixth Circuit has held that absent allegations that a defendant's "actions ended or prevented a business relationship, [a plaintiff] does not state a claim." *Wilkey v. Hull*, 366 F. App'x 634, 638 (6th Cir. 2010).  Moreover, vague assertions of interference with unspecified contracts or relationships are akin to legal conclusions which are afforded no weight. *Id.*; *see also Iqbal*, 556 U.S. at 678.

For the reasons above, Counts Six and Seven are dismissed.

### 8.    Defamation

Defendants do not move to dismiss Count Eight.  (*See* Doc. No. 8-1 at 122; Doc. No. 11 at 271.)

### 9.    Deceptive Trade Practices

Defendants do not move to dismiss Count Nine.  (*Id.*)

### 10.    Conspiracy

"Civil conspiracy in Ohio is 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996) (quoting *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995)).  Defendants seek dismissal of Count Ten on the grounds that Plaintiffs fail to state a viable underlying claim.  (Doc. No. 8-1 at 121.)  As discussed above, however, the Court concludes that certain of the claims survive this motion to dismiss.  Moreover, Defendants did not move for dismissal of Counts Eight and Nine.

Defendants' second argument is that Plaintiffs did not plead any unlawful acts.  (Doc. No. 8-1 at 122.)  This argument is not well-taken because the allegation is that Defendants made

false statements and submissions to various secretaries of state, which could be the basis for criminal or civil liability if proved.  *See, e.g.*, WY Stat. § 6-5-308(a)(ii)-(iii).

For the reasons above, the motion to dismiss the conspiracy claim in Count Ten is denied.

## IV.  <u>Conclusion</u>

For the reasons above, Defendants' Rule 12(b)(2) motion to dismiss is GRANTED IN PART and DENIED IN PART.  Ohio's Long-Arm Statute does not confer jurisdiction on Plaintiffs' claims for tax consequences in other states or alleged out-of-state letters of harassment.  Defendants' Rule 12(b)(3) motion for improper venue is DENIED.  Defendants' Rule 12(b)(6) motion to dismiss is GRANTED as to Counts Four, Five, Six, and Seven, and DENIED as to Counts One, Two, Three, and Ten.


**IT IS SO ORDERED.**


**Date:** May 9, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE